Good afternoon, Your Honors. May it please the Court, I am Ryan Martinette of Eisman Law Offices representing the appellant Deanna Everett who is here today. Richard B. Eisman is my co-counsel and he is also here today. I would like to reserve seven minutes for rebuttal. This case arose as an accidental death insurance policy claim. The insurer filed a motion for summary judgment and the District Court granted that motion for two reasons. The first reason is that the appellant Deanna did not adequately disclose Dr. Seale as an expert which resulted in Dr. Seale's opinion not being considered in the motion for summary judgment. Without Dr. Seale's affidavit, the Court found that there was no factual dispute over the cause of death. The second reason is that the District Court found Deanna's proof of loss to be deficient. The first item I want to get into today and address is what I believe to be a deficiency in the insurer's motion for summary judgment. The insurer in the motion for summary judgment never asked for the relief that Dr. Seale be excluded as an expert. Right. Could I ask about that? Yeah. I noticed that and it was raised though at oral argument and then you were given an opportunity to brief the question, weren't you? Well, yes. We did brief that question. Okay. And so what I wondered is whether you were prejudiced by that. It didn't seem to me to be an ambush where you didn't get to address the issue. Is that fair to say? I would argue that we were prejudiced and we were ambushed by that. Why? And just an example of why I would say that is, part of what the District Court found as a deficiency in Dr. Seale's affidavit, it was that he did not form his opinion while he was treating the deceased. If we had known that that was going to be a basis for objecting to it, we could have went to the doctor and said, okay, when did you form this opinion on the deceased's cause of death? But without us ever knowing that, we never had the opportunity to put that into an affidavit of Dr. Seale. Right. And I'll just tell you, I didn't find that particularly persuasive because it is virtually routine that a treating physician who is asked to memorialize an opinion, it's going to be inked later. It's going to be dated later. So that's not the part that concerned me. I just wanted to know whether or not you felt that the motion was infirm and fatally infirm because you didn't hear about this in advance, particularly because the trial court gave you an opportunity to brief the issue. As far as addressing the opportunity to brief the issue, I mean, we weren't allowed the opportunity to put any additional facts into the record. The District Court said we could do a three-page brief. And a three-page brief, when you're talking, you know, space and a half font with a court title, it didn't give us room to really do much of anything. So what do you want to put in there? Other than that, you would want to, I guess, to establish when the doctor formed his opinion. But what else would you have thrown in had you added up, you know, ten pages or fifteen pages or earlier notice? Well, that would have been the main one. That was one of the District Court's main objections to it. I mean, the District Court also took issue with the timeliness of our disclosure. But I would want to go back and I would want to put something into the record showing the 2014 letter that I really believe has been warped into something that it was never intended to be. Could I back up and ask you a more fundamental question before we go off on that? Is it your position that this was a treating expert or a retained expert? A treating expert. So no report was necessary, right? I believe a report would be necessary to the extent where you have to make a summary of the opinions and facts. Well, I guess maybe I beg to differ, but I'm not suggesting that there wouldn't have had to be a disclosure about the nature of the witness's opinion, but I'm talking about a report that would have complied with the rule. You didn't prepare one, right? It's just the one letter? No, we did prepare an expert witness disclosure. No, I'm talking about a report, sir. No, we did not have Dr. Seale. Because he was a treating physician. Yes, because the FRCP 26A2C was what we viewed Dr. Seale to be, the retained. It wasn't a trick question. I just wanted to verify this guy's a treating physician and that's how you treat a . . . pardon the pun, but that's how . . . Yes. Okay. I want to just be sure I understand your answer to Judge Christin. You say that he was a retained expert or a non-retained expert? He was a non-retained expert. You confused me there for a minute. He was a non-retained expert. I misspoke. Okay. Dr. Seale was the deceased's cardiologist, and so he was treating the deceased all through the end of his life. Counsel, let me take you right to the heart of my concern here. As a treating expert, Dr. Seale can testify as to those things that he's witnessed because he's been very hands-on with the decedent. But he did not examine the decedent after he died. He had no . . . he didn't examine . . . he didn't go over to the coroner's office, didn't examine the body, didn't have any way of participating in that. So how can he possibly offer an opinion about the cause of death? See, and that was something I really struggled with. The idea that a doctor that's . . . the cardiologist and the deceased died of a heart issue, according to the death certificate, but the idea that a doctor cannot provide an opinion on the cause of death because he didn't do an autopsy was kind of like almost what was . . . If he hasn't examined the body, how does he know it was not heart failure? He was the one that was treating him for the heart issue. Right, but he wasn't there. I mean, you know, the decedent could have died from, you know, a bull goring him on the farm. And how could he contradict a report that said that's the way that he died if he hasn't been there to examine the body, if he wasn't there at the time? How long before that had Dr. Seale seen him? I don't know the exact date on how long before. But a couple of weeks, right? He had seen him after the neck fracture, so he had seen what his condition was both before and after. Right, and we'd had other incidents between the time of the neck fracture and the time of his death. Yes. Okay. How can he possibly then tell us what the cause of death was or, importantly, what the cause of death wasn't? The problem with the neck fracture is none of the doctors could really say, like, for mathematical certainty, what specifically happened. I don't think our medicine is... What specifically happened when? What specifically caused the death? Well, that's why you had an autopsy, right? There was no autopsy. But you have a coroner. You have a medical expert who's done something here and offered a cause of death. Yes. We had his... Dr. Gardner was the doctor that prepared the death certificate. He was a doctor that was overseeing Dr. Bitters, who was the primary, just general physician for the deceased. And so Dr. Gardner is the one that actually prepared the death certificate. What was the basis for his opinion? In that, he said that it was a heart issue and a kidney issue. And how did he know that? I'm assuming through his conversations with Dr. Bitters... Dr. Bitters? Was Dr. Bitters present? Dr. Bitters was treating all throughout this time period. Okay. When the gentleman died, did any doctor look at him? No doctor performed an autopsy. Did anybody examine him? Was he taken to the emergency? He died at home, from what I understand. But... What's the basis for the death certificate? The basis for the death certificate was that Dr. Gardner was saying that the deceased had serious heart and kidney issues. He was actually very specific on the death certificate. He said it was heart failure. He was. One of the interesting things is when we deposed Dr. Gardner, he actually said that the deceased would have lived longer had it not been for the neck fracture. I think what Judge Biby is trying to get at is whether the treating physician that you wanted to use, forgive me, his name is... Dr. Seale. Was he on an equal footing as Dr. Gardner or did Dr. Gardner have a stronger evidentiary basis to opine on the cause of death? I would argue that Dr. Seale actually had the better opinion on the cause of death. The deceased died of a heart issue. Dr. Seale was the cardiologist. Dr. Seale would know better than anybody what the condition of the deceased's heart was. But he didn't examine the body, and is your point that neither did Dr. Gardner? There was no autopsy. I mean, I'm assuming the doctor... Somebody put something on that death certificate for a reason. Yes. They're not just making it up. No. Okay. So he's not just speculating. No. Okay. So somebody's got a basis. Dr. Seale doesn't. He's not there. I don't understand how he can testify as a treating expert as to this fact. He can testify as a treating expert as to lots of things, but I don't see how he gets there as to this fact if he hasn't examined it. How can he contradict the medical judgment of another doctor? I don't even think it's actually contradictory. I think if you put all this in front of a jury, I think it would all work together. But I don't see why... And the jury could conclude that it was the result of the neck fracture? Yes. I do believe that. Genuinely. Even though the death certificate says it was as a result of heart failure? I believe if the jury was actually informed of Dr. Gardner's full opinion... I mean, in the death certificate, he's given these little boxes on, you've got to choose kind of what it was. So he put in, yeah, he died of the heart condition and the kidney condition. But he also is testifying in his deposition that it was the neck fracture. Was Dr. Gardner's deposition in the record? I don't think I saw it. Portions of it were. When you did the last brief at the district court level, we included portions of it. Are they in the record provided to us? Portions of it are. So we were required in the excerpts of the record to only provide the portions that we were going to be quoting from. And so the whole deposition, I don't believe made it in there. Just portions of it are in there. Okay. Can you tell me where it is? I'll find that on my break. And when I come back up here, I'll... My colleagues have suggested that there's a big problem in this case. The only possible salvation I see is this R&R sales case that we asked you to look at where the judges did not explain why your case was dealt a fatal blow. And it may have been the explanation that my colleagues have referred to. And do you think R&R sales saves your case? And if so, why? Do you want me to address that now or do I need to address that? It doesn't really matter. Okay. R&R sales I do believe applies and I do believe it saves our case because what R&R sales was holding was if there was a deficiency or a defect in the disclosure under FRCP 26 and the sanction pursuant to that violation ends up in the result of the dismissal of the entire case, then R&R sales is saying, hey, district court, we've got to look at whether or not the noncompliance was willful at fault or in bad faith, and I don't think ours was, and also look for lesser possible sanctions. So basically, I get that point probably right, but that doesn't really overcome the problem that my colleagues have highlighted, does it? If Dr. Seale didn't examine the body and somebody else gave an opinion there, even if the district judge explains why he eliminated Dr. Seale's testimony, is that going to help you, is it? I'm still stuck back on the portion that Dr. Seale can't give an opinion on this. I don't understand why he couldn't. Just because he didn't go and inspect the body the last day of the deceased's life. Your argument is basically that it goes to weight, not admissibility, and the trial court didn't get to the evidentiary ruling. He ruled it excluded for failure to disclose, right? Yes, that's a much better way of trying to say what I was trying to say. I'm not trying to put words in your mouth. I think that is what you're trying to say, and I'm trying to make sure that I understand you correctly. Yes. I think all the evidence needed to be considered, and then if the insurer wants to punch holes into the weight that's to be given to Dr. Seale's opinion, okay. But let's also get Dr. Gardner there, and let's have the full opinion be presented to a jury, and that's all we're asking is that opportunity. Was Dr. Gardner also deposed? There's a record of what basis he had for the cause of death opinion? All three doctors, Gardner, Bitters, and Seale, were all deposed. Thank you. Counsel, one last question. If we were to determine that this could go back, but that Dr. Seale, I'm out on a limb here just a little bit, but Dr. Seale could not testify as to the manner of death, you have a case? As long as we're allowed to supplement the record with Dr. Gardner's opinion, I believe that we would still have a question of fact, but we didn't get an affidavit of Dr. Gardner in response to the motion for summary judgment, so unless we are allowed to add in that doctor's opinion And what do you think Dr. Gardner would testify to? Essentially what I was just saying was that Dr. Gardner did testify that the deceased would have lived longer had he not broken his neck. Okay, now that's a different question. Because that goes to sort of a contributory cause, that is, is it possible that the heart condition was aggravated as a result of the automobile accident? Now if that's the argument that you have, do you have coverage under the insurance policy? Well, under Idaho law, we have to prove what is the predominant cause of death, and so I guess it would be really pinning Dr. Gardner down on what his opinion was on the predominant cause of death. But hasn't he already done that? Isn't that what he did in the death certificate? Did he mention anything about the neck fracture? His evidence is somewhat conflicting on that. I mean, he says one thing in the death certificate, but he's also saying other things in his deposition testimony. And so I think that that's the kind of factual dispute that has to be put in front of a jury and for the jury to decide, okay, what is the predominant cause of death? You'll get me the citation when you stand back up on the reference to Dr. Gardner's deposition in the record that we have, the excerpts of record. I will try to find that right now. We've taken quite a bit of your time. I will afford you time for rebuttal. Thank you. Thank you, Your Honors. My name is Mark Sebastian. I'm here representing American General. If it pleases the Court, I would first point out that Dr. Gardner's full deposition as well as the depositions of the other two doctors are in the record, in the supplemental excerpts of record. Dr. Gardner's deposition is at the supplemental excerpts at page 113. If you turn to page 122, the supplemental excerpts is where he was asked about whether – about the neck fracture. And Mr. Martinette had asked him a question, do you have an opinion on whether Mr. Whitley's neck fracture affected the length of his life? Answer, yes. Question, okay, would Mr. Whitley have lived longer had he not fractured his neck? There's a couple of objections and then – I'm sorry, what page are you on? Page 122 of the supplemental excerpts. And what was his answer, counsel? His answer there was most likely, but then going down a little bit further – Most likely he would have lived longer had he not fractured his neck. Correct. Correct. And that was on page 30 – page 38 of the deposition, but all this is on page 122 of the supplemental excerpt. Okay. Going down further though, on further examination, he did though go – he was asked about whether or not that would have – was indicated in his records or evaluations. He says, I have not indicated that in the records. That would be speculation. But based on the extent of such an injury with an individual of this illness, the question Okay, but speculation? The answer, yes, I would say speculation. So, counsel, I'm not so interested in his opinion as I am in the basis for his opinion. Did he examine the decedent after his death? Dr. Gardner and bidders had seen Dr. Whitley when he first returned to Idaho from the Mayo Clinic, which was at the beginning of March 2011. He participated in his treatment that month. On March 23, 2011, Dr. Gardner and Dr. Bidders had examined Mr. Whitley at his home. That was approximately two weeks before his death. During the visit, Mr. Whitley had requested that his defibrillator and his pacemaker be deactivated. So, is the answer to my question about whether or not he examined the body that he did not do so? So, he – as far as I know, he did not examine the body after the death. So, none of the doctors examined the body after death. Is that what you're saying? As far as I know, nobody – none of the doctors examined him after death. So, Dr. Seale's opinion is just as valid in terms of the cause of death as Dr. Gardner's or Dr. Bidder's because they didn't examine the body after death. Well, the – At least arguably so. No, because the death certificate is prima facie evidence. I get that. I get that. But – Counsel, doesn't this go to wait, not admissibility? We're here about whether or not there was proper disclosure of the opinion, right? Correct. And it may be – I was just responding, too. Sure. And you're responding to our questions, of course, but I'm just trying to make sure that my notes are focused on the issue because if we send this back, the trial court might decide it's not admissible for any number of reasons, it seems to me, but we're trying to figure out whether it's knocked out for failure to disclose. So I think that it would be helpful, at least for me, if you could address R&R sales. Okay. Well, basically what we have – we have two cases really that are relevant, R&R sales and YETI. Okay. R&R sales was, by its own language in there, the court found that the disclosure in there were not required to be affirmatively produced. It was something that had to be asked. And furthermore, when the evidence that was being – the evidence that was being stricken or prohibited in that case was the sole evidence on that subject matter of damages. So you think it's distinguishable for that reason? I think it is distinguishable. I think what we have here is more like the case in YETI where the – again, YETI had a disclosure – failure to disclose an expert timely. The court, specifically in that case, said that it wasn't as distinguishable from cases in which we required a district court to identify willfulness, fault, or bad faith, and that it – even though there was a sanction, it was less than a dismissal. In this case, we have first an affirmative – there was an affirmative duty to do the disclosures per the expert disclosures. I would note that on their first expert disclosure, they didn't even include Dr. Seale. It was only on their supplemental. The – Counsel, forgive me. I agree with you that technically they probably didn't comply, but the reality is the insurance company not only knew about Dr. Seale's, they took his deposition. The deposition – This is not – that is not a surprise. And now we have a situation where none of the doctors examined the body. They all had their views. They dealt with the decedent as medical doctors. They all had their views. Here the doctor is dealing with a non-retained expert and removing his testimony was a fatal blow to their claim. Under R&R Seales, isn't the district court supposed to find it was harmless? And if so, or whether there was bad faith, that didn't happen here. Why isn't the appropriate thing here, since we don't have a doctor who actually examined the body, why isn't the appropriate thing to do to send this back to the district court? Let the district court determine whether this was in fact harmless. He can weigh the weight of evidence and so on, but the insurance company was certainly not prejudiced by a failure to disclose Dr. Seale, was it? Yes, Your Honor, it was. First of all, I would note that Dr. Seale's deposition occurred on April 27th of 2015, so it was a substantial amount of time after the summary judgment was filed. Sorry, April, can you give me the date again? Forgive me. Oh, I'm sorry. It was April 27th. Okay, and your point is that that was prejudicial because it was a long time. I was just correcting. It was after the summary judgment was filed. But this wasn't a surprise. You had the informal production of the letter. You had them identify his name on the prior witness list, even though they didn't provide a summary of what he would testify to. So you really weren't surprised to learn that they were planning on calling Dr. Seale. This didn't catch you flat-footed, right? No, he was disclosed as a treating physician, and that's the way it was in the initial disclosures. There was nothing about his cause of death other than a letter, and when it came up to that point of their initial disclosures, I mean their expert disclosures, when they were first due, they didn't even include him as an expert. The reality is, though, you knew about him. You ultimately took his deposition, and the district court did not do a harmlessness analysis. No, it didn't find that bad faith, didn't find anything that would be required under R&R sales. So my question to you is, since the insurance company was clearly not surprised, however it was technically indicated, why isn't the appropriate thing to do to let the district court make a determination whether eliminating Dr. Seale's testimony was harmless in this case? It gutted their case. Now, you may say it didn't have a case anyway, but the reality is it gutted their case, and the harmlessness analysis didn't occur. Well, the court did actually determine that it was harmful. The court did that. You're saying the district court did a harmlessness analysis in an R&R sales sense? Well, they didn't cite R&R sales, but they did the analysis. The court said that it was harmful to us, it was prejudicial to the defendants because inadequate disclosure had come after the deadline. You've reversed who has to prove what. You've reversed who has to prove what on that, though. You're saying it was harmful to you. The question is whether it . . . when the removal of the expert essentially is fatal to their case, the district court has to make a determination whether what was done was harmless and then analyze whether there was bad faith involved and so on, and that wasn't done, was it? Well, let me give you some background on the procedural status of the case. Plaintiffs had provided some medical records as part of their initial disclosures. The next medical records that we received were not until December of 2014, and at that point they indicated that they were having issues with obtaining . . . or at some point around there they indicated they were having problems getting records. So we undertook to undertake collecting records. So by the time that the disclosure deadline had come up, we still had many hospitals and clinics that we still didn't have any records from. Counsel, can I stop you there? We didn't have a complete set of Dr. Seals records. Forgive me for interrupting, but I want to make sure that I'm understanding something. As of that point, they had also given you a records release so that you could get all the records, right? No, we were doing subpoenas. They had given you a records release, hadn't they? I think the records shows they had. Am I mistaken? In the litigation or at some other . . .  so you could obtain medical records, Counsel? Your Honor, I don't believe that they did, but I don't know for sure. What I do know is that when we were requesting the records later on, we were using subpoenas, and we had to get a letter from them for one of the hospitals indicating that they approved of or had no objection to the hospital turning the records over. You seem to be suggesting in response to Judge Smith that there was a failure on the plaintiff's part because they had not affirmatively produced all the records as opposed to giving you a release, and I want to make sure I'm understanding your argument correctly. Are you making that argument or am I misunderstanding? I'm giving the Court a background to show that we did not have complete information in January of 2015. Sure, and my question, just to be clear, is whether or not you're trying to argue or suggest that that's plaintiff's fault or that they were somehow out of compliance with the rules at that point. Were they out of compliance with their disclosure obligations? I believe that they should have made an effort to produce those records as part of their disclosure requirements. Okay, so my question is just a little different, and I don't think you answered it, and I want to make sure that I'm understanding the law correctly. Is it your position that as of January they were out of compliance with their disclosure obligations? They were as far as Dr. Seale goes, yes. Because? Because we had not received all of his records at that time. Had they given you a records release? And they did not provide the information that would have been required even for him as a physician where he's providing an opinion that's after his treatment, not related with his treatment. I think you probably better go back to Judge Smith's question. And as I indicated, I don't believe that they provided a release. I think, like I said, we were operating at that time under subpoenas  before it would even release the records. Counsel, what kind of burden did the plaintiffs bear in terms of showing that the neck fracture was a contributory cause, a contributing cause to his death? For us, it would be rebutting. When was your policy? The plaintiff has the burden of proving that it was death due to accident. Okay. But if it's a contributing cause, are they covered under the policy? I don't believe so. That was part of the alternate argument that I raised in my brief, was that the policy excluded death if natural causes or sickness was, if sickness was partly or wholly the cause of death. What about the Jones v. Mountain State Telephone Telegraph Company, Idaho case that suggests that the issue is what is the dominant cause? How do you address that? There's two lines of cases in Idaho. One refers to the insuring agreement, which talks about sole cause, and they made that into a term of art. There was a separate case, though, that upheld an exclusion where the person's death was attributable in part to another cause. But even if it was the dominant cause, the facts and record in this case indicate that Mr. Whitley had decades of heart problems and it had become very severe in 2010. Who determines that? Who's the trier of fact of what's the dominant cause? Is it a legal question, a factual question, a mixed factual and legal question? No, I think if we were talking about the cases that dealt with the insuring agreement portion, I might agree with you, but it's pretty clear that from the exclusion that the court is authorized to interpret it if there's no ambiguity. It becomes a question of law at that point as to interpretation of it, and the facts readily show that there was at least some other cause, because even the heart condition even contributed to it, and even Dr. Seale's testimony did rule out that the heart condition was at least a part of it. So I believe that even on that grounds it would be able to be supported. Okay, counsel, thank you. Thank you. Mr. Martinet, I'll give you some time. My clock. I'm going to give you two minutes. Okay. All right, thank you. I want to respond to this lack of autopsy and examination issue. Just because we don't have an autopsy or an examination, it just means the evidence has less weight. This shouldn't mean that the law has no answer for Ms. Whitley or Deanna if there wasn't any examination. Was Dr. Gardner a treating physician or was he the emergency room physician? It seemed more like he was the physician overseeing Dr. Bitters. And was Dr. Bitters an examining physician, or was she examining on a regular basis, or was she only examining because she was an ER resident? She was examining on a regular basis. She was his general treating physician, as I understand it. As far as the issue on deposing Dr. Seale, I do want to point out that it was their decision to wait that long to depose Dr. Seale. So when they deposed him in April of 2015, that was their decision, not ours. The insurer knew that we had intended to call Dr. Seale as a witness. We said in our June 14th letter that Dr. Seale's opinion would have to be introduced through his testimony. I mean, when we say his testimony, that's pretty clear that we were going to use his testimony at trial. The next thing that was brought up as far as we didn't produce medical records, we produced 800 pages of medical records and seven DVDs containing more medical records than our initial disclosures. So to complain that we didn't disclose medical records. Well, he's talking specifically about Seale's medical records, and his point is that he didn't want to depose Dr. Seale until he had Dr. Seale's records, which is entirely reasonable. So when did he get Dr. Seale's records, please? I believe they subpoenaed Dr. Seale's records. But do you know when they got them? I don't know the specific date that they got all of Dr. Seale's records that was provided to them. But the court was right in that the insurer did have a medical release. That's at the excerpts of record, page 213, that Deanna, when she made her proof of loss claim, she provided them with a medical records release. They could have had those records at any time. Thank you. Thank you. We thank both counsel for the argument. Everett v. American General Life Insurance Company is submitted.
judges: Bybee, M. Smith, Christen